David N. Chandler, Sr.   SBN 60780
David N. Chandler, Jr.   SBN 235427
DAVID N. CHANDLER, p.c.
1747 Fourth Street
Santa Rosa, CA  95404
Telephone: (707) 528-4331

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE:                          CASE No. 10-12153

PROWEST MEDIA CORPORATION,      CHAPTER 11

____DEBTOR._____/          DISCLOSURE STATEMENT

I

A. **INTRODUCTION.**

Prowest Media Corporation, hereafter referred to as "Debtor" submits this Disclosure Statement to all of its known creditors and interest holders entitled to same pursuant to section 1125 of the United States Bankruptcy Code ll U.S.C. Section 101, et seq. ("the bankruptcy code"). The purpose of this Disclosure Statement is to provide creditors of the debtor with such information as may be deemed material, important and necessary in order to make a reasonably informed decision in exercising the right to vote on the Debtor's Chapter ll Plan(the "Plan") described below. The Debtor's Chapter ll Plan has been filed with this Court.

NO REPRESENTATIONS CONCERNING THE DEBTOR (INCLUDING THE VALUE OF ASSETS, ANY PROPERTY AND CREDITORS CLAIMS)INCONSISTENT WITH ANYTHING CONTAINED HEREIN HAVE BEEN AUTHORIZED.  Except as otherwise expressly stated, the portions of this Disclosure

1

Statement describing the Debtor and the Plan have been prepared from information obtained from the Debtor.

Under the Plan, Secured claims, to the extent allowed as secured claims pursuant to 11 U.S.C. Section 506, and to the extent of the validity of the security interest is determined by the Court and not otherwise avoidable will be paid in full, or, otherwise, shall retain the real property collateral in full satisfaction of said allowed claim. Unsecured claims shall be paid the aggregate sum of $265,000, in 72 monthly installments.

A Chapter 7 liquidation could take up to three years before distribution is made, if any, and additional Administrative expenses would be incurred. Tax consequences of liquidation, expenses of sale, professional fees and trustee's fees are administrative expenses in a Chapter 7 liquidation are paid before prepetition claims are paid. Administrative expenses of Chapter 11 are also paid prior to payment of prepetition claims. Liquidation of corporation property is simply not practical or feasible at the current time. Debtor estimates that the percentage which would be available to unsecured creditors upon liquidation of the assets in a Chapter 7 case is 0%. The estimate is based upon Debtor's analysis of liquidation which is set forth in Exhibit A hereto.

B. <u>FILING OF REORGANIZATION CASE</u>.

On June 3, 2010, the Debtor filed its petition pursuant to Chapter 11 of the Bankruptcy Code. Since that time the Debtor has remained in possession of the property as debtor in possession.

C. <u>MANNER OF VOTING</u>.

All creditors entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating, signing and

2

Case: 10-12153    Doc# 50    Filed: 09/03/10    Entered: 09/03/10 16:56:14    Page 2 of 12

causing the Ballot Form accompanying this Disclosure Statement to be sent to the Debtor's counsel prior to the date set by the Court for the filing of such ballots.

D. <u>CONFIRMATION OF THE PLAN</u>.

1. <u>Solicitation of Acceptance</u>.

This Disclosure Statement has been approved by the Bankruptcy Court in accordance with section 1125 of the bankruptcy code and is provided to each creditor whose claim has been scheduled by the Debtor or who has filed a Proof of Claim against the Debtor and to each interest holder of record as of the date of approval of this Disclosure Statement. The Disclosure Statement is intended to assist creditors and interest holders in evaluating the Plan and in determining whether to accept the Plan. Under the bankruptcy code, acceptance of the Plan may not be solicited unless a copy of this Disclosure Statement is received prior to or concurrently with such solicitation.

2. <u>Persons Entitled to Vote on Plan.</u>

Only the votes of Classes of claimants and interest holders which are impaired by the Plan are counted in connection with confirmation of the Plan. Generally and subject to the specific provisions of bankruptcy code section 1124, this includes creditors who, under the Plan, will receive less than payment in full of their creditor's claims.

In determining acceptance of the Plan, votes will only be counted if submitted by a creditor whose claim is duly scheduled by the debtor, as undisputed, non-contingent and unliquidated, or who, prior to the hearing on confirmation, has filed with the court a Proof of Claim which has not been disallowed or suspended prior to

3

computation of the votes on the Plan. The Ballot form which you receive does not constitute a Proof of Claim. If you are in any way uncertain whether or not your claim has been correctly scheduled, you should review the Debtor's schedules which are on file in the Bankruptcy Court. The clerk of the Bankruptcy Court will not provide this information by telephone.

   3. <u>Hearing on Confirmation of the Plan.</u>

The Bankruptcy Court will set a hearing to determine whether the Plan has been accepted by the requisite number of creditors and interest holders and whether the other requirements of confirmation of the Plan have been satisfied. Each creditor and interest holder will receive, either with this Disclosure Statement or separately, the Bankruptcy Court's Notice of Hearing on Confirmation of the Plan.

   4. <u>Acceptance Necessary to Confirm Plan.</u>

At the scheduled hearing, the Bankruptcy Court must determine, among other things, whether the Plan has been accepted by each impaired Class. Under bankruptcy code section 1125 an impaired Class is deemed to have accepted the Plan if at least two thirds in amount and more than one-half in number of the allowed claims or interest of Class members who have voted to accept or reject the Plan have voted for acceptance of the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired Class, the Bankruptcy Court must also determine that under the Plan Class members will receive property of a value, as of the effective date of the Plan, that is not less than the amount that such Class members would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on the effective date of the Plan.

4

### 5. Confirmation of the Plan Without Necessary Acceptance.

The Plan may be confirmed even if it is not accepted by one or all of the impaired Classes, if the Bankruptcy Court finds that the Plan does not discriminate unfairly against and is fair and equitable as to such Class or Classes.

II

A. DESCRIPTION OF DEBTOR AND HISTORICAL BACKGROUND.

The Debtor was formed in late 2002 by John Rutherford and Tom Settle. In the second quarter of 2003, Prowest purchased the assets of Colt Studio. After closing escrow, the Debtor proceeded with business, but discovered that the existing business and brand was dead, and that the only means to capitalize on the assets purchased was to produce new, contemporary content, while leveraging what little equity remained in the Colt brand. The Colt brand was licensed through licensees known to John Rutherford through his 15 year tenure in the all-male adult entertainment industry.

Through key licensing arrangements and development of a website, Debtor was able to capitalize on the market. New content was produced as quickly as possible while attempts were made to convert existing content purchased to the burgeoning DVD market. Debtor began to run into difficulty when it was discovered that it was not provided all of the images which it had purchased. Without the images, it was difficult to produce new packaging, magazines and calendars.

The Debtor's business grew from 2003 to 2007. The demand for DVD at the retail and wholesale level began to level off in 2006

and by early 2008 was seriously declining. Distributors left the business as did a number of retailers. By the end of 2008, the Debtor was in financial crisis. Debtor closed its offices in San Francisco and moved business operations to Sonoma which reduced overhead by $20,000 per month. Staff was reduced and shipping and logistics were moved to Nevada which resulted in an additional savings of over $5,000 per month. Debtor developed a new strategic web partner and completed a successful migration to their platform by the end of the third quarter of 2009. This allowed the Debtor to concentrate on production of new content.

Debtor was unable to pay the payments on the original purchase agreement and Jim French Studios brought suit. Debtor's inability to reach a successful mediated resolution left it with little alternative.

Tom Settle and John Rutherford have each filed their own Chapter 7 cases. The assets of the individuals, including the equity in the Debtor are property of the Chapter 7 bankruptcy estates subject to exemptions claimed therein. The Chapter 7 Trustee(s) have not taken any action with respect to such assets.

B. THE PLAN.

The Plan proposes to pay to unsecured creditors the aggregate sum of $265,000 on a prorata basis over a 72 month period. This amount is estimated to return 35% to holders of allowed unsecured claims. Debtor has prepared its analysis of liquidation of its assets under Chapter 7 of the Code hereto as Exhibit A. Said analysis shows that there would be no proceeds of liquidation available for payment of unsecured claims in the event of a Chapter 7 liquidation. A liquidation under Chapter 7 can take up to two

6

years to administer before any distribution is made. Recovery against Jim French Studios is speculative, although the claim has merit and is based upon the withholding of numerous images from those turned over pursuant to the terms of the sale which withholding was the primary cause of the Debtor's financial difficulties.

The Plan divides claims and interests into four (4) classes. The classes consist of the following:

<u>Class 1 Claims.</u> Allowed claims entitled to priority pursuant to Section 507 of the Code.

<u>Class 2 Claims.</u> Allowed secured claims of Jim French Studio, Inc. secured by inventory and intangibles.

<u>Class 3 Claims.</u> Allowed claims of creditors other than those holding allowed Class 1 Claims, Class 2 Claims, Class 4 Interests, including, but not limited to, creditors whose claims may arise out of the rejection of executory contracts and secured creditors to the extent that the Court finds the same unsecured in whole or in part.

<u>Class 4 Interests.</u> Allowed interests of the shareholders of the Debtor herein.

The Plan treats the classes as follows:

<u>Class 1 Claims are impaired.</u> Holders of allowed Class 1 Claims shall be paid in full in seventy two (72) equal monthly installments of principle and interest at the statutory rate.

<u>Class 2 Claims are impaired.</u> Holders of allowed Class 2 Claims shall be paid an amount equal to such holders interest in the Debtor's interest in the collateral in 96 equal monthly installments of principle together with interest at the note rate.

7

Debtor shall retain its right with respect to avoidance of the security interest, set off against the allowed claim based upon failure of consideration, misrepresentation and fraud. Such holder shall retain its security interest in the collateral subject to such avoidance rights claims or off set which may, at the option of Debtor, be first applied to the Class 2 Claim.

<u>Class 3 Claims are impaired.</u> Holders of allowed Class 3 Claims shall be paid $265,000 on a prorata basis in 72 equal monthly installments.

<u>Class 4 Interests are impaired.</u> Holders of allowed Class 4 Interests shall retain such interests subject to the terms of the Plan. Holders of such allowed interests shall contribute on the effective date of the Plan the equity interest in Bouledogue, LLC as additional capital. There are no assets currently in Bouledogue, LLC. John Rutherford and Tom Settle are working on a project and have been since the filing of this case which they had hoped to unveil through the said LLC. The LLC is currently property of their individual bankruptcy cases. The post petition project may be contributed to that LLC or another LLC to be formed depending upon the interest asserted by the Chapter 7 Trustee(s). In any event, the project has been developed by Settle and Rutherford since the petition was filed and is not property of the Chapter 7 estate(s). Jim French Studios may assert otherwise.

THE PLAN PROVIDES FOR THE MEANS OF EXECUTION AS FOLLOWS:

1. Debtor shall continue to operate its media production business under the direction of John Rutherford and Tom Settle as officers and directors of the corporation.

2. John Rutherford and Tom Settle shall retain their

8

interests (Class 4 Interests) in the corporate Debtor and shall contribute on the effective date of the Plan, equity interests in Bouledogue, LLC by merger.

3. Debtor shall commence payments to the holders of allowed Class 1 Claims on the effective date of the Plan. Such payments shall equal 1/72nd of the allowed Class 1 Claim together with interest at the statutory rate then applicable.

4. Debtor shall further commence payments to the holder of allowed Class 2 Claims in 96 equal monthly installments of principle together with interest at the rate provided in the Note. The amount of such claim shall be determined pursuant to 11 U.S.C. § 506. Debtor shall reserve all rights to avoid the lien of such holder as well as all rights of set off and damages against such holder.

5. Debtor reserves the right to bring Motions or Adversary Proceedings pursuant to 11 U.S.C. § 506 to determine the value of the personal property collateral of Jim French Studio. Such Motion(s) or Adversary Proceeding shall be brought within 90 days of the effective date of the Plan. The said limit shall be subject to extension by order of the Court upon motion by the Debtor.

6. All claims and causes of action against Jim French Studio, Colt Studio, Colt Studios, Jim French, agents and attorneys, including rights of set off are specifically reserved. Any right of set off as to the allowed claim of such parties may, at the option of the Debtor, be first set off against the Class 2 Claim.

7. No party shall take any action against the Debtor, its assets, or assets of the estate inconsistent with the terms of the

9

within Plan.

8. The Debtor shall comply with post confirmation reporting requirements to the U.S. Trustee and payment of U.S. Trustee fees post confirmation until entry of Final Order as required by law. Nothing contained in the Plan shall impose or expand the requirements for reporting and payment of fees as set forth by statute and/or case law. In the event the case is converted to a case under Chapter 7, the assets shall revest in the Chapter 7 estate. Debtor shall be the disbursing agent absent appointment of another person or entity by the Court at the time of confirmation.

9. Debtor may object to claims as appropriate and all rights of counterclaim and setoff as to any party filing a claim against the estate are specifically reserved.

10. Debtor reserves the following claims/causes of action:

   a. Jim French Studio, a California corporation. Avoidance of security interest, set off, damages for failure of consideration, misrepresentation, fraud, conversion, misappropriation of images, set off;

   b. Colt Studio(s), a Nevada corporation. Avoidance of security interest, set off, damages for failure of consideration, misrepresentation, fraud, conversion, misappropriation of images, set off;

   c. Colt Studio(s), a California corporation. Avoidance of security interest, set off, damages for failure of consideration, misrepresentation, fraud, conversion, misappropriation of images, set off.

IV

The assets and liabilities of the Debtor are set forth in the

10

Debtor's Schedules, on file with the Court.  The Proponent believes that the terms of the Plan are feasible, and that it will be able to perform under the Plan.  The Debtor requests confirmation of the Plan.

Dated:    9/3/10                         DAVID N. CHANDLER, p.c.


                                         By: */s/David N. Chandler*
                                         DAVID N. CHANDLER
                                         Attorney for Debtor

LIQUIDATION ANALYSIS
(Exhibit A)

| Asset | Value | Secured Debt | Net |
|---|---|---|---|
| Cash | 10,000 | -0- | 10,000 |
| Accounts Receivable | 60,000 | Unknown* | Unknown |
| Copyrights/ trademarks/ tradename | Unknown | * | Unknown |
| Customer list | 0.00 | -0- | -0- |
| 1996 GMC Safari | 1,000 | -0- | 1,000 |
| 1988 MBZ SL | 12,000 | -0- | 12,000 |
| Office Equip. | 6,000 | -0- | 6,000 |
| Wardrobe | 500 | -0- | 500 |
| WHS Shelv. | 5,000 | -0- | 5,000 |
| Inventory | 10,000 | | -0- |
| Counterclaim (French) | Unknown | -0- | Unknown |
| | | | $34,500 |

*encumbered by lien of Jim French Studio, Inc. Extent of lien is disputed. Lien secures a purported $1,485,000.

Excluding the accounts receivable and unknown values, the Debtor estimates a Chapter 7 estate would have approximately $34,500 available for distribution. Administrative priority claims would most likely consume a significant portion of the amounts on hand. Priority claims of the Internal Revenue Service would be paid the balance of the funds on hand in a Chapter 7 after payment of administrative expenses. There would be nothing remaining to distribute to unsecured creditors in the event of a Chapter 7 case.