MacCONAGHY & BARNIER, PLC
JOHN H. MacCONAGHY, SBN 83684
JEAN BARNIER, SBN 231683
MONIQUE JEWETT-BREWSTER, SBN 217792
645 First St. West. Suite D
Sonoma, California 95476
Telephone: (707) 935-3205
Facsimile: (707) 935-7051
Email: macclaw@macbarlaw.com

Counsel for Secured Creditor
JIM FRENCH STUDIOS, INC.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re )
) Case No. 10-12153
PROWEST MEDIA CORPORATION, ) (Chapter 11)
a California Corporation, )
) **OBJECTION OF JIM FRENCH
Debtor. ) STUDIOS, INC TO CONFIRMATION
_____) OF DEBTOR'S PLAN OF
REORGANIZATION, DATED
JULY 7, 2010**

Date: December 10, 2010
Time: 9:00 a.m.
Santa Rosa Courtroom–Jaroslovsky

## INTRODUCTION

Jim French Studios, Inc. ("JFS") is wholly owned by Jim French. Mr. French is 78 years old and in ill health. Starting in 1967 he built the business that is now owned by the Debtor Prowest Media. In June, 2003, he sold the business to Prowest for $2,500,000.00. The terms provided for a $250,000 cash down payment, with the balance paid by a Promissory Note secured by a blanket lien on all of the assets, including the lucrative adult website, www.coltstudiogroup.com. He is currently owed approximately $1,500,000. He is the only secured creditor and by far the largest unsecured creditor of the Debtor, who has been engaged in a multi-year campaign to cheat him out of his collateral, including the gross misuse of his cash

collateral in this case.

## **FACTUAL AND PROCEDURAL BACKGROUND**

After years of stalling in State Court without making payments to either JFS or the IRS ($600,000 in unpaid payroll taxes) Prowest filed this Chapter 11 case.

On June 17, 2010, JFS filed a Motion for Relief from Stay. On August 12, 2010, a combined final evidentiary hearing was held on JFS's Motion for Relief from Stay and the Debtor's Motion to Use Cash Collateral. At the conclusion of the hearing, the Court **denied** the Debtor's Motion to Use Cash Collateral, see Docket No. 42, and granted JFS's Motion for Relief from Stay, see Docket No. 43. Smirking at the financial exhaustion of a sick old man, the Debtor has since refused entry onto its business premises to allow JFS to retrieve its collateral.

Immediately after the August 12 hearing, JFS filed a Motion for Rule 2004 Examination which, among other things, sought production of the actual cancelled checks and other primary financial documents of the Debtor to investigate the Debtor's use and/or misuse of its cash collateral. The Debtor stalled this by filing a Motion for Protective Order. While the Motion for Protective Order was pending, and on September 17, 2010, JFS filed a Motion to Convert Case to Chapter 7 due to the Debtor's misuse of cash collateral. Both the hearing on the Motion for Protective Order and the Motion to Convert were set for October 22.

The Debtor promised to produce the missing documents before October 22, but this did not occur. At the October 22 hearing, the Debtor represented to the Court that it had sequestered the cash collateral of JFS and that it would immediately produce all of the missing documents. Neither of these things were true.

The case was again before the Court on November 12, where the Debtor sought leave to pay a post petition retainer. Again, the representation was made that cash collateral was being "sequestered", not a true segregation, but as an accounting entry "on the general ledger." This, too, was false.

Now we have the confirmation hearing on the Debtor's Plan. The Debtor proposes to bifurcate the claim of JFS into secured and unsecured portions. The secured portion is to be paid over 8 years at the note rate of 7%. The unsecured portion will share in a pro-rata dividend payable over 6 years. JFS has voted to reject the Plan in its capacities as both a secured and unsecured creditor.

## SUMMARY OF GROUNDS FOR OBJECTION TO DEBTOR'S PLAN

1. The Debtor Has Not Complied With Chapter 11 (Section 1129 (a)(2)).

2. The Debtor's Plan Fails to Disclose the Identity and Compensation of its Post Confirmation Management (Section 1129(a)(5)).

3. The Debtor's Plan Has Not Been Accepted By a Legitimate, Impaired Non-Insider Creditor Class (Sections 1129(a)(8) & (10)).

4. The Debtor's Plan Is Not Feasible (Section 1129(a)(11)).

5. The Debtor's Plan Does Not Meet the Requirements for a Cram Down Set Forth In Section 1129(b) Because It Is Not "Fair and Equitable" To the Secured Creditor JFS.

## ARGUMENT

**1. The Debtor Has Not Complied With Title 11 (Section 1129 (a)(2)).**

Secured Creditor JFS continues to strenuously object to the theft of its cash collateral by the Debtor's management in gross violation of Section 363(b), compounded by (1) the Debtor's failure to file Monthly Operating Reports, (2) the repeated, false misrepresentations on the record that the cash collateral of JFS is being "sequestered," and (3) the Debtor's failure and refusal to respond to the modest discovery request of JFS on this issue.

**2. The Debtor's Plan Fails to Disclose the Identity and Compensation of its Post Confirmation Management (Section 1129(a)(5)).**

The Debtor's Plan and related Disclosure Statement fail to specify the identity and compensation of the post confirmation officers and directors, as is expressly required by Section

1129(a)(5). This defect cannot be corrected now, since it is a key financial term which should have been disclosed to creditors to enable them to intelligently vote on the Debtor's Plan.

### 3. The Debtor's Plan Has Not Been Accepted By a Legitimate, Impaired Non-Insider Creditor Class (Sections 1129(a)(8) & (10)).

The Plan has four classes: (1) "Priority Claims"; (2) the Secured Claim of JFS; (3) General unsecured claims; and (4) Insider interests.

There are no non-tax priority claim, and the claims bar date has lapsed. In other words, there are no creditors in this class.

The Class 2 Secured Claim of JFS has voted to reject the Plan. The Class 4 Interests cannot be counted due to their "insider status".

According to both the Debtor and JFS, JFS is undersecured. Pursuant to Rule 3018(d) JFS has the right to vote its claim in both the Secured Class 2 and the General Unsecured Class 3. It has bifurcated its claim for voting purposes in the amount of $750,000 secured and $607,739.95 unsecured. Its Class 3 unsecured claim has likewise voted to reject the Plan. The Debtor's total scheduled unsecured claims, not counting JFS, are $655,620.01.

It is mathematically impossible to the Debtor to procure the acceptance of a legitimate, non-insider impaired class.

### 4. The Debtor's Plan Is Not Feasible (Section 1129(a)(11)).

There are grave feasability problems with the Debtor's Plan.

First, the Debtor's principals are themselves in no-asset Chapter 7 bankruptcies.

Second, the Debtor's plan is premised upon a $100,000 cash contribution from Bouledoge, LLC, a shell entity wholly owned by the Debtor's principals at the time of their Chapter 7 bankruptcy filings, and thus the property of their respective individual Chapter 7 Trustee. Either Bouledoge, LLC has nothing, or the Debtor's principals lied about that fact on their personal schedules.

Third, even if $100,000 could be raised, that sum is far less than is required to adequately capitalize the Debtor.

Fourth, the Debtor must be able to generate sufficient cash to pay (1) ongoing operating expenses, including current taxes, (2) $600,000 + in back priority payroll and sales taxes within the time required by Section 1129(a)(9)(C), (3) debt service payments to the Secured Creditor JFS on account of its secured claim, and (4) another $3,680.56 per month to its unsecured creditors. The Debtor has not been able to do any of these four things for years, so we are mystified as to why it thinks it can start doing so now.

**5. Assuming *Arguendo* that the Debtor's Plan Has Been Accepted by a Legitimate, Impaired Non-Insider Creditor Class, the Debtor's Plan Does Not Meet the Requirements for a Cram Down Set forth in Section 1129(b).**

**A. The Debtor's Plan is Not "Fair and Equitable" Because It Violates the Absolute Priority Rule**

The Debtor's Plan violates the absolute priority rule. Under the Debtor's Plan, its existing equity holders are retaining all of their managerial control, and the right to set their own salaries that come with that control. The Plan provides that the existing interests are nominally cancelled,[1] but goes on to provide that the Debtor's principals have the **exclusive right** to participate in the issuance of new LLC interests in the Debtor in consideration for their fictional $100,000 capital contribution from Bouledoge, LLC. Of course, this attempt at meeting the "new value" exception to the absolute priority rule is directly contrary to the Supreme Court's decision in *Bank of America Nat'l Trust & Sav. Assn. v. 203 N. LaSalle St. Ptsp.* 526 U.S. 434 (1999), which held that "new value" investment schemes exclusively available to the Debtor's management violate the absolute priority rule.

---

[1] Well, maybe. The Plan provides at p.5: 7-9 that all equity interests will be cancelled. Then it goes on to provide at p. 5:23-25 that Messrs. Rutherford and Settle will retain their equity interests.

### B. The Debtor's Plan is Not "Fair and Equitable" Because The Note Terms Are Unreasonable

As noted above, the Debtor proposes to pay JFS the secured portion of its claim – whatever that amount may be – over 8 years at the original note interest rate of 7% per annum. This does not meet the formulaic approach set forth in *In re Till* 541 U.S. 465, 124 S.Ct. 1951 (2004) and applied to Chapter 11 by the Sixth Circuit in *In re American Homepatient, Inc.* 420 F.3d 559 (6th Cir. 2005) cert. den. 127 S.Ct. 55 (2006). Given the fact that the post confirmation obligation is (1) secured by depreciating assets, (2) made by a borrower who has never been able to make a single post-petition payment, and (3) not supported by any new capital contribution from the Debtor, the minimum interest rate necessary to meet the test of *Till* is easily the contract rate of 14% per annum.

Furthermore, the Debtor's plan provision that first it confirms, then it litigates its 506 bifurcation claim is inherently unfair. How do we know if the Debtor can pay post-confirmation debt service until we know what that debt service is ? Why should JFS be put to the burden of a confirmation fight, if it turns out that the Debtor will default on the post confirmation debt service if the Court sets the amount of the secured portion of the claim too high ? There are no good answers to these questions.

### **CONCLUSION**

This Chapter 11 has been run as a scam to steal cash collateral. Confirmation of the Debtor's Plan should be summarily denied..

Dated: November 29, 2010          Respectfully submitted,

MACCONAGHY & BARNIER, PLC


   /s/ John H. MacConaghy
John H. MacConaghy
*Attorneys for Jim French Studios, Inc.*

9610.OBJ.Conf                                                                                                                              PAGE 6
Case 10-12153   Doc# 69   Filed: 11/29/10   Entered: 11/29/10 18:57:59   Page 6 of 6